Commonwealth ex rel. Fine *v.* Fine, Appellant.

Argued September 14, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*David H. Kubert,* for appellant.

*Stephen I. Weiss,* with him *Weiss, Nelson & Moskowitz,* for appellee.

OPINION PER CURIAM, November 28, 1972:
Order affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from an order awarding custody of the parties' minor son to the father. Appellant alleges primarily that there did not exist that degree of evidence to justify such an order—to wit, that appellee had not sufficiently rebutted the "tender years" presumption normally existing in custody cases.

The parties were married on February 12, 1961, and separated from each other on May 9, 1969. Michael Randy Fine, now age 10, is the only child of the marriage. The custody of the boy had been with the mother from the date of separation until the order of the court below. The record disclosed that the father had always exercised liberal visitation rights, and that neither parent had ever attempted to alienate the child from the other. In January of 1971, the father instituted proceedings to obtain custody of his son. The father's request was based upon allegations that the mother had repeatedly shown extreme harshness to and lack of understanding for the emotional needs of the

child, who admittedly was suffering from an emotional disorder.

Numerous hearings were held pursuant to said proceedings, the first of which occurred on June 22, 1971, and the last occurring on November 23, 1971. During this time, the lower court received conflicting testimony as to the mother's attitude and conduct toward the child. Although there was evidence that on occasion the mother might have been somewhat stern towards the minor child, all the testimony disclosed that the mother had sought professional care and special education for the child, and that she had always displayed a concern for the child's welfare.

The crux of the case was undoubtedly the testimony of the expert witnesses. A psychologist called on behalf of appellee testified that as a result of tests and evaluations of the minor child the child should be placed in the care and custody of the father. He based his opinion on the conclusion that continued exposure to his mother's lack of understanding and affection could irreversibly disrupt the child's well-being. A court-appointed psychiatrist, on the other hand, found that the child needed his mother's love and attention. After examining the minor child and interviewing both parents, the psychiatrist concluded that he saw no reason to take the child out of the mother's custody.

The court chose to rely on the psychologist's recommendations, and on April 5, 1972, awarded custody of the child to the father. It is from that order that this appeal followed.

It is fundamental in cases pertaining to child custody that the "paramount consideration is the welfare of the children and that all other considerations, including the rights of parents, are subordinate to the children's physical, intellectual, moral, spiritual and emotional well being." *Commonwealth ex rel. McNamee*

*v. Jackson,* 183 Pa. Superior Ct. 522, 525-26, 132 A. 2d 396 (1957). The task of determining what serves best the welfare of the child is an onerous and delicate one. The psychological and emotional impact upon the minor child, who is in his formative years, can be devastating if we fail to painstakingly review all the conditions and circumstances that may affect the child's wellbeing.

From the numerous cases that this Court has reviewed, it has become apparent that under normal circumstances, the child's emotional needs are most satisfactorily fulfilled by the mother, to whom the child instinctively turns for comfort and love. This, of course, subsumes the situation where the parents are separated or divorced, and the child is unable to benefit from the contributions both parents can make to his growth and development. As such, a presumption has arisen that a mother has a prima facie right to her children over any other person. *Commonwealth ex rel. Fox v. Fox,* 216 Pa. Superior Ct. 11, 260 A. 2d 470 (1969). That presumption is not easily overcome. As we said in *Fox,* at p. 13, "Unless compelling reasons appear to the contrary, a child of tender years should be committed to the care and custody of its mother, by whom the needs of the child are ordinarily best served. . . ."

The question then becomes whether *compelling reasons* were offered by appellee to justify an award to the father of this minor child.

Barry Bricklin, a Ph.D. in Psychology, testified that he submitted the minor child to a battery of tests, and on the basis of his evaluation, recommended that the child be awarded to the father's custody. In support of that recommendation, Dr. Bricklin said: "Based, of course, on the test data—and this is just my opinion now, taking everything into account—I really couldn't see how it could negatively affect him. First

of all, from the information I have, he already does see a good bit of his father. I can see from the test data that he is more comfortable, more reassured, more secure with him, so I couldn't envision why there would be any kind of trauma associated with that. . . . Interestingly enough, not only in this case but in any case of primary learning disability these children typically do better with the father." These conclusions came after but two hours of testing, without so much as a single interview with either parent, or the minor himself. His feelings were that such interviews would have been irrelevant and could not have shed any more crucial data than the tests he had conducted.

The lower court appointed Richard N. Smith, M.D., a noted psychiatrist, who conducted certain clinical studies and interviews with the child, and with both Mr. and Mrs. Fine. In a written report admitted into evidence, Dr. Smith said: "My conclusion, therefore, was that Michael was not suffering from a major mental illness, but that he was probably suffering from the emotional conflicts arising from the stressful situation of the chronic marital tensions of his parents leading to insecurity and fears of abandonment." At a subsequent hearing, Dr. Smith concluded: "On the basis of my interviews, I saw no substitute for (a child's) own mother . . . any emotionally disturbed child needs a close mothering relationship. This applies to Michael."

From a thorough examination of the record, I believe that the evidence presented to the lower court was inconclusive, and did not constitute the "compelling reasons" necessary to rebut the "tender years" presumption. I believe that this case should be remanded to the lower court for additional, independent review. Six months have passed since the child has had the opportunity to live with the father. The lower court should appoint an impartial panel of experts, including a phy-

sician and a psychiatrist, utilizing, in part, psychological tests and studies capable of rendering a full and fair evaluation of the child.

I am not prepared to award custody of a minor child merely on the basis of objective testing. Personal observation and interviewing are indispensable tools in predicating such a decision. Tests, while valuable barometers indicating certain inostensible characteristics and behavior patterns, do not supplant face-to-face confrontation, and as such should be but one tool in making a diagnosis. The Court, additionally, should conduct its own interrogation of the parties, including the child himself.

After the court is in a position to interpret the results of the combined data of interviews and comprehensive physical, mental, and psychological studies, it should then decide which parent is more capable of providing for this child's welfare.

I would, therefore, remand this case to the lower court for further proceedings consistent with this opinion.

SPAULDING and PACKEL, JJ., join in this dissenting opinion.